[Cite as *Bell v. Kinman*, 2014-Ohio-2817.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN   COUNTY

| | | |
|---|---|---|
| MELISSA BELL | : | |
| | : | Appellate Case No. 2014-CA-2 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 00-DR-102 |
| v. | : | |
| | : | |
| DONALD KINMAN | : | (Civil Appeal from |
| | : | Champaign County Family Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of June, 2014.

. . . . . . . . . . .

MIRANDA A. WARREN, Atty. Reg. #0081103, Goslee & Goslee, Ltd., 114 South Main Street, Post Office Box 416, Bellefontaine, Ohio 43311
    Attorney for Plaintiff-Appellant

REBEKAH S. NEUHERZ, Atty. Reg. #0072093, Neuherz Law Offices, LLC, 115 North Main Street, Suite F, Urbana, Ohio 43078
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1}    Plaintiff-appellant Melissa Bell, formerly known as Melissa Kinman, appeals from an order of the trial court adopting an in-court agreement between Bell and her ex-husband,

Donald Kinman, regarding child support, medical bills and parenting time. She contends that the trial court abused its discretion by adopting the agreement, because she did not agree with the entry and was under duress at the time of its entry. She further contends that Kinman's failure to object to, or appeal from, a prior child support order waived his right subsequently to move for modification of the order.

{¶ 2} The record supports a finding that the parties entered into an agreement, which was reduced to writing and incorporated in the trial court's order. Bell has failed to establish that the order does not accurately reflect the terms of the agreement, or that she was under duress at the time the agreement was reached. Finally, we conclude that the issue of child support modification was properly before the trial court. Accordingly, the order of the trial court is Affirmed.

## I. The Course of Proceedings

{¶ 3} Melissa Bell and Donald Kinman were divorced in the early 2000's. They have one minor child. In August 2013, Kinman's child support obligation was modified as a result of a magistrate's decision, pursuant to a motion to review filed by the Champaign County Child Support Enforcement Agency. The modification set his obligation at $470.92 per month. A month later, Kinman filed a motion seeking to hold Bell in contempt with regard to parenting time, and for the trial court to "review and revise the current order of child support to comply with [the] actual living arrangement" of the parties and the child.

{¶ 4} At the start of the hearing on Kinman's motion, the trial court stated, "[t]he Court has been discussing this matter with counsel and counsel has been discussing the matter

with their clients, and I do believe we have a resolution; is that correct?" Counsel for Kinman answered affirmatively, and proceeded to recite the terms of the agreement. The record indicates that the CSEA had improperly calculated Kinman's child support obligation and that Kinman, since 2010, had overpaid child support in the sum of $4,045.56. The parties agreed that Kinman's obligation would be reduced by the sum of $163.85 per month for the remaining term of the obligation, in order to recoup the overpayment.[1] The parties further agreed that they would split equally all medical bills. Kinman agreed to dismiss his motion for contempt in exchange for Bell's promises to abide by the terms of the existing parenting order and to encourage the child to attend parenting time.

{¶ 5} Bell's attorney acknowledged the agreement. The trial court then proceeded to ask Kinman, personally, whether he agreed to the terms as stated by his attorney, to which he responded affirmatively. The trial court then asked Bell, personally, whether the recited terms represented the agreement she wanted. At that point, Bell's attorney interjected, asking the court whether it would enter an order requiring that Kinman's girlfriend absent herself during his parenting time. The trial court indicated that it would not do so, and then proceeded to advise the parties about some "recommendations based on what I talked with [the child] about in a very short time period. Some of it was reasonable. Some of it wasn't." The trial court then went on to advise the parties to refrain from speaking to the child about the disagreements between the parents. Bell did not respond to the prior question whether the agreement represented what she wanted.

{¶ 6} The trial court then set a date for the parties to draft, sign, and file the agreed

---

[1] The child was fourteen years old at the time of the hearing.

order. The trial court then asked both attorneys whether they had "anything further," to which they responded in the negative. Court was then adjourned.

{¶ 7} When the agreed order was not filed within the time specified by the trial court, it set a show-cause hearing. The agreed order was later presented, and the court noted, on the record, that Kinman's counsel was present, and indicated that Kinman would sign the agreed order as drafted. The trial court then noted that Bell who had obtained new counsel, had indicated that she "did not believe that the agreed entry reflected the agreement." The trial court permitted Bell's counsel to listen to an audiotape of the prior hearing, following which Bell's counsel acknowledged that the agreement was reflected accurately in the agreed order submitted to the court. But counsel again indicated that Bell "maintains that that wasn't the agreement that she had thought it was." Bell's prior attorney, who was also present, stated that the agreed entry reflected the agreement previously read into the record. The trial court then noted that it would "approve the agreed entry and make it a final order of the Court without [Bell's] signature or her counsel's signature." The order was entered on December 17, 2013. Bell appeals.

## II. The Trial Court Had Authority to Modify its Prior Child-Support Order in Accordance with the In-Court Agreement of the Parties

{¶ 8} Bell asserts the following as her First Assignment of Error:

THE TRIAL COURT DID NOT HAVE THE AUTHORITY OR THE JURISDICTION WHEN IT ADOPTED THE APPELLEE'S CHILD SUPPORT, WAVIED [SIC] ARREARGES [SIC], PERMITTIED [SIC] APPELLEE TO CLAIM THE PARTIES' MINOR CHILD, AND SPLIT ANY AND ALL

UNINSURED MEDICAL EXPENSES EQUALLY WITHOUT BOTH PARTIES [SIC] APPROVAL.

**{¶ 9}** Bell contends that Kinman failed to follow the appropriate procedure for challenging the child support order in place when he filed his motion. In support, she notes that child support was modified by Magistrate order on August 19, 2013, at which time the Magistrate set Kinman's child-support obligation at $470.92 per month. She argues that Kinman was required to object to the magistrate's decision and, if unsuccessful, appeal from the trial court's order adopting the magistrate's decision. She argues that because he failed to take either action, his motion "was not properly before the trial court, and therefore the trial court had no authority to adopt the Agreement."

**{¶ 10}** Bell is correct that a party who disagrees with the decision of a magistrate must file objections thereto, and that the failure to file objections generally waives the right to appeal from the order adopting the magistrate's decision. Civ.R. 53(D)(3)(b)(1); *Davis v. Gray*, 10th Dist. Franklin NO. 02AP-746, 2003-Ohio-1655, ¶ 10. But some time after the modification, the parties discovered that the Child Support Agency had been incorrectly calculating the amount of child support. "The court * * * retains jurisdiction to modify all matters pertaining to * * * child support * * *." R.C. 3105.65. "The trial court possesses considerable discretion in child support matters." *Murray v. Murray* (1999), 128 Ohio App.3d 662, 666, 716 N.E.2d 288 (12th Dist. 1999). "The decision of the trial court will be reversed only if it is the product of an abuse of discretion." *Id*. The trial court had the continuing jurisdiction to modify its order of child support, and the clerical error by the CSEA was a proper basis upon which to exercise that authority.

{¶ 11} Bell also ignores the fact that the parties reached agreement regarding the child-support issue, as well as the issues of medical bills and parenting time. This case is similar to *Van Hoose v. Van Hoose*, 2d Dist. Champaign No. 99 CA 18, 2000 WL 353213 (April 7, 2000), wherein the parties, on the morning of a hearing, negotiated a settlement that was read into the record with the parties present. *Id.* at * 1. When an entry was subsequently drafted, Ms. Van Hoose refused to sign it, claiming that it did not reflect the parties' agreement. *Id.* This court stated:

> Settlement agreements are favored in the law. Where the parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract. Thus, when the parties to a divorce enter into an in-court settlement agreement, the court may accept the agreement even if one party tries to repudiate it so long as the court is convinced that the agreement was not procured by fraud, duress, overreaching, or undue influence. Neither a change of heart nor poor legal advice is a ground to set aside a settlement agreement.

> A careful comparison of the settlement terms read into the record on May 21, 1999 and the entry which Mrs. Van Hoose refused to sign reveals that the written entry does reflect the agreement entered in open court. Indeed, Mrs. Van Hoose does not contend that the written entry differed from the terms presented to the court on May 21, 1999. Rather, she claims that she had been so upset by the parties' negotiations that she "didn't even know what was said in [court]" on May 21 and that, upon further reflection, she believed that she had been "duped."

> Mr. and Mrs. Van Hoose were each present and represented by counsel

during the negotiations and in court on May 21, 1999. After Mr. Van Hoose's attorney read the parties' agreement into the record, Mrs. Van Hoose's attorney clarified some points that he thought needed clarification and indicated that the agreement, as represented and clarified, reflected what the parties had negotiated. The trial court did not address Mr. or Mrs. Van Hoose directly regarding the settlement agreement, and neither party made a statement on his or her own behalf.

Mrs. Van Hoose would like this court to conclude that her attorney did not speak for her and that she did not assent to the agreement. We decline to do so. Mrs. Van Hoose's presence in court and her silence in response to her attorney's representations about the agreement the parties had reached served to ratify her attorney's actions. Moreover, Mrs. Van Hoose presented no evidence of fraud or other misconduct on the part of her attorney or her husband when she was given an opportunity to do so at the August 20, 1999 hearing. Her claim that she had felt overwhelmed by the negotiation process, without evidence of fraud, duress, overreaching, or undue influence, was simply insufficient to allow her to repudiate the agreement. To have permitted Mrs. Van Hoose to unilaterally repudiate the settlement agreement would have rendered the entire settlement process a nullity, even though, as we have already discussed, the in-court settlement agreement was binding. *Id.* at * 1-2 (internal citations omitted).

{¶ 12} In the case before us, the parties entered into an agreement regarding the issues of child support, medical bills and parenting time. The attorneys for both parties acknowledged the

agreement, which was read into the record before the trial court. While Bell did not personally acknowledge the agreement, she did not disavow her attorney's acknowledgment of her agreement until the court held a show-cause hearing a month later. Even then, other than stating generally that the agreement "wasn't the agreement that she had thought it was," Bell did not specify in what respect the agreed entry tendered by Kinman's attorney differed from what she had thought the agreement to be. Indeed, as in *Van Hoose*, Bell "does not contend that the written entry differed from the terms presented to the court." Furthermore, as discussed in Part III, below, Bell made no claims of fraud, duress, coercion, or other misconduct regarding the agreement. Unlike in *Van Hoose*, Bell did not claim that she did not know what had been said in open court concerning the agreement of the parties. Given these facts, we conclude that the trial court did not abuse its discretion by entering the agreed order.

{¶ 13} The First Assignment of Error is overruled.

### III. The Trial Court Did Not Abuse its Discretion by Entering the Agreed Order in Accordance with the In-Court Agreement of the Parties

{¶ 14} Ms. Bell's Second Assignment of Error states:

IT WAS AN ABUSE OF DISCRETION WHEN THE TRIAL COURT ADOPTED AN AGREEMENT MODIFIYING [SIC] THE APPELLEE'S CHILD SUPPORT, WAVING [SIC] ARREARGES [SIC], AND PERMITTING THE APPELLEE TO CLAIM THE PARTIES [SIC] MINOR CHILD WITHOUT AN AGREEMENT BY BOTH PARTIES.

{¶ 15} In this assignment of error, Bell contends that she did not assent to the terms of

the agreement and was under duress when the agreement was presented to the court. In support, she argues that she "was operating under the belief that if she just did as [Kinman] asked it would stop the constant harassment, and she would no longer be required to defend herself in Court. Further, [she] was under the impression the Trial Court would grant the relief requested should she go forward with an evidentiary hearing. [She] was under the impression that she had no other recourse to discontinue the constant duress caused by [Kinman]." Bell's appellate brief, p.7.

{¶ 16} The record does not support Bell's claim of duress. There is also no evidence of fraud, coercion, or any other misconduct surrounding the formation of the agreement. Bell did not file any documents regarding her claim of duress prior to the show-cause hearing. And she made no claims of duress during the show-cause hearing. Bell's counsel merely stated that Bell "maintains that [the agreement as written and recited] wasn't the agreement that she had thought it was." Bell never filed any documents or made any statement on the record regarding what she believed to be incorrectly set forth in the agreed entry presented to the trial court.

{¶ 17} The Second Assignment of Error is not supported by the record, and is overruled.

## IV. Conclusion

{¶ 18} Both of Bell's assignments of error having been overruled, the order of the trial court from which this appeal is taken is Affirmed.

. . . . . . . . . . . . .

HALL and WELBAUM, JJ., concur.

Copies mailed to:

Miranda A. Warren
Rebekah S. Neuherz
Hon. Lori L. Reisinger